SUNNYSLOPE GRADING, INC., Plaintiff-Appellant,

v.

MILLER, BRADFORD & RISBERG, INC., Defendant,

HEIN-WERNER CORPORATION, Defendant-Respondent.

Supreme Court

*No. 87–1978. Argued January 30, 1989.—Decided March 27, 1989.*

(Also reported in 437 N.W.2d 213.)

For the plaintiff-appellant there were briefs (in court of appeals) by *Steven J. Lownik, T. Michael Schober,* and *Schober & Radtke, S.C.,* New Berlin, and oral argument by *Mr. Lownik.*

For the defendant-respondent there was a brief (in court of appeals) by *Trevor J. Will,* and *Michael G. McCarty,* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Will.*

STEINMETZ, J.   The issue in this case is whether a commercial purchaser of construction equipment, which is covered by a manufacturer's warranty, has a cause of action against the manufacturer in negligence or strict liability to recover lost profits and the costs of repairing the equipment when the manufacturer did not breach its warranty and the equipment failure did not cause personal injury or damage to other property. We only address the question of whether damages to the product itself and economic losses flowing therefrom are recoverable in tort when a warranty exists in a commercial setting, and we reserve comment on the question of whether a warranty can limit amounts recoverable due to damage to property other than the product itself.

The trial court found that based on the undisputed facts no tort claim existed for the recovery of lost profits

or the cost of repairs, and that Hein-Werner Corporation's motion for summary judgment was warranted. Sunnyslope Grading, Inc. acknowledges that summary judgment is appropriate; however, it argues that the trial court applied an incorrect rule of law. The plaintiff appealed this decision to the court of appeals. The court of appeals certified the case to this court pursuant to sec. 809.61, Stats. We affirm the decision of the trial court.

Sunnyslope is a grading and excavation contractor. The company does trenching, backfilling, finish grading and site work for office buildings, factories and small streets. Previously, Sunnyslope specialized in digging basements and foundations for residential construction. Sunnyslope owns numerous pieces of construction equipment, including backhoes, bulldozers, loaders, dump trucks, rollers and a grader.

Hein-Werner which is based in Waukesha, Wisconsin, formerly manufactured construction equipment, including the C–14B backhoes at issue in this case. Defendant Miller, Bradford and Risberg, Inc. (MBR) was a dealer for Hein-Werner construction equipment. MBR gave a warranty to Sunnyslope that the backhoes in question would be "merchantable."[1]

---

[1]The warranty states:

> Seller warrants that the goods supplied hereunder will conform to the description herein stated; that it will convey good title thereto, free of all liens; and that such goods will be of merchantable quality, this is seller's sole warranty with respect to the goods. Seller makes no other warranty of any kind whatever, expressed or implied, including the implied warranties of merchantability and fitness for a particular purpose; all implied warranties of merchantability and fitness for a particular purpose which exceed the aforestated obligation are hereby specifically disclaimed by seller and are excluded from this agreement. Both parties acknowledge that there are no oral or written promises, terms, conditions,

MBR moved for summary judgment contending that it had not breached its warranty. The trial court found that factual issues existed whether MBR's warranty was breached and denied MBR's motion for summary judgment. Sunnyslope's claim against MBR for breach of warranty remains pending in the circuit court and therefore MBR is not a party to this appeal.

At various times Sunnyslope owned three Hein-Werner C–14B backhoes. The first C–14B was purchased in March, 1976, but traded in on a third C–14B. The second C–14B was leased from MBR in May of 1977. In December of 1977, Sunnyslope purchased the leased C–14B backhoe and still owns and uses it.

The third C–14B backhoe was also purchased in December of 1977. It replaced the first C–14B. In June of 1982, the third C–14B itself was traded to a company in Rockford, Illinois, for a D–8 bulldozer which is not a Hein-Werner machine.

Hein-Werner also extended to each purchaser of a C–14B a written manufacturer's warranty.[2] The warran-

representations, or warranties, expressed or implied, concerning these goods, other than those contained herein in writing, if any.

[2]The warranty states:

Hein-Werner Corporation hereby warrants that the products manufactured by it shall be free from defects in material and workmanship for a period of six months or 1000 hours of use, whichever shall occur first. Such warranty shall be limited to the replacement, f.o.b. the factor or at such other place as Company may designate, of such parts as shall appear to Company, upon inspection at such place, to have been defective in material or workmanship under normal storage, use and service. Company's warranty does not obligate it to bear any other costs excepting only the furnishing of a replacement for the defective part. Company shall not be liable for any other cost or damages, whether direct, incidental or consequential, including but not limited to, any injury, or loss or damage resulting from the use or loss of use of any of Company's products. Company's warranty obligation with re-

ty limited Hein-Werner's obligation to fixing defects for a period of six months or 1,000 hours of use, whichever occurred first. The warranty was specifically "limited to the replacement ... of such parts as shall appear to Company ... to have been defective in material or workmanship under normal storage, use and service." The warranty also limited Hein-Werner's liability by stating: "Company shall not be liable for any other cost or damages, whether direct, incidental or consequential, including but not limited to, any injury, or loss or damage resulting from the use or loss of use of any of Company's products."

At various times after December, 1977, certain parts on Sunnyslope's C–14B backhoes broke or wore out. These failures did not cause any personal injury nor did they damage any property other than the backhoes themselves. Hein-Werner repaired those failures which were covered under its warranty. Sunnyslope acknowledges that the repairs covered by the warranty were corrected by MBR or Hein-Werner, and it accepted those repairs under the warranty.

Sunnyslope is seeking damages for additional replacement parts, labor charges, down-time expenses

---

spect to engines, batteries, tires or other equipment or parts supplied but not manufactured by it shall be limited to the warranty extended to Company by its supplier. *The foregoing warranty is in lieu of any and all other warranties, express or implied, including but not limited to warranties of merchantability and fitness for purpose.* No representative of Company is authorized to change this warranty in any way, and no attempt to repair or promise to repair the products of Company by any representative of Company shall change or extend this warranty in any way. This warranty applies only to new and unused products which after shipment from the factory of Company have not been altered, changed or repaired by others in such manner as to affect such products materially and adversely. This warranty is effective only when the delivery notification form is properly completed and signed.

and lost profits associated with repairs not covered by the warranty that it incurred. Because the warranty specifically excluded these damages, Sunnyslope brought the action against Hein-Werner in tort. Regardless of whether the warranty was breached, Sunnyslope argues there exists an independent and additional duty upon which to base this action in tort. The trial court found that on these facts Sunnyslope could not recover such damages on either the tort theory of negligence or strict liability.

■

The facts are undisputed in this case. The question of whether Wisconsin law allows recovery under these facts is a question of law which is reviewed by this court without giving deference to the trial court's determination. *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

An analysis of Wisconsin case law indicates that under the facts of this case a cause of action does not exist either in negligence or strict liability, and we decline to expand upon this precedent. Furthermore, the reasoning of relevant federal cases indicates this holding is more appropriate than that posed by Sunnyslope.

■

Hein-Werner offered a warranty to the purchasers of its products. The warranty specified that Hein-Werner would do certain things for purchasers and would not do certain other things. There was a warranty in effect between the parties and evidence of this was Sunnyslope's accepting repairs under it. As previously noted, Sunnyslope implicitly acknowledged the validity of the warranty when it accepted repairs under the warranty. Because they were parties to an enforceable warranty, Sunnyslope and Hein-Werner were in privity.

Privity is nothing more than the relationship between the parties to a contract and follows from the fact that a contract exists. *See Paulson v. Olson Implement Co., Inc.,* 107 Wis. 2d 510, 517, 319 N.W.2d 855 (1982). Since this warranty created privity between Sunnyslope and Hein-Werner, the limitations of the warranty were available. The risk of damages flowing from a failure of this product was specifically allocated to the parties by the warranty.

■ The Uniform Commercial Code—Sales, ch. 402, Stats., sets forth the rights and remedies which govern a transaction between two commercial parties of relatively equal bargaining power. In holding that contract principles should be applied in determining the parties' rights in this case, we view sec. 402.719(3) as persuasive. Section 402.719(3) states: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." We agree with the weight of authority which supports the proposition that the legislative protections granted by the Uniform Commercial Code are not to be buttressed by tort principles and recovery. *Spring Motors Distributors v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660, 673 (1985). The duty to provide a product which functions to certain specifications is contractual. If a commercial purchaser wants a machine of higher quality, better durability or one with a better warranty, the purchaser is free to negotiate in the marketplace.

Sunnyslope relies on *La Crosse v. Schubert, Schroeder & Asso.,* 72 Wis. 2d 38, 240 N.W.2d 124 (1976). In *La Crosse,* the plaintiff had a roof installed

which was manufactured by Kaiser Aluminum and installed by a general contractor. The roof leaked and a portion of it blew off thereby requiring replacement of the entire roof. The plaintiff asserted claims for breach of warranty, negligence and strict liability. Although no personal injury resulted, the plaintiff sought recovery for the cost of repair of the roof eaves damaged by the defective roof and for the cost of replacement of the roof itself under the theory of strict liability. *Id.* at 44. No claim was made for economic losses.

The *La Crosse* court held that the city could not advance a breach of warranty cause of action against Kaiser because it was not in privity of contract with Kaiser. *Id.* at 41–42. It was not alleged that Kaiser gave an express warranty to the plaintiff in conjunction with the roof and therefore this court found that Kaiser had no "direct contractual relationship" with the plaintiff. *Id.* at 42. The city had not contractually accepted an allocation of the risk of loss through a warranty and did not have the opportunity to recover under warranty theories when the product proved unsuitable. Absent any contractual allocation of the risk, the court held that "[d]amages to other property and to the product itself are recoverable in a cause of action based on strict liability in tort." *Id.* at 44. However, the application of this language must be limited to the facts of the *La Crosse* case and therefore only applies to cases in which there is no warranty or contract between the parties. Any additional reliance upon the language of the *La Crosse* opinion is inappropriate. Today we explicitly recognize that the language of the *La Crosse* opinion was broader than necessary to determine the issue before the court and was therefore dicta.

In addition, an analysis of the cases relied upon by the *La Crosse* court support our conclusion today.

*Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 20, A.2d 305 (1965), relied on in the *La Crosse* case, imposed tort liability for economic losses caused by a defective product. Subsequently, *Santor* was restricted by the same court in *Spring Motors.* In *Spring Motors,* the plaintiff purchased 14 trucks from a Ford dealer and later experienced transmission problems. The trucks were subject to Ford's standard manufacturer's warranty. The question was whether *Spring Motors* could recover the costs of repair, towing, replacement parts, lost profits, and other consequential damages from Ford and the selling dealer. That court stated: "We hold that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence." *Spring Motors,* 98 N.J. at 561, 489 A.2d at 663.

The other cases cited by Sunnyslope, *Air Products & Chemicals, Inc. v. Fairbanks,* 58 Wis. 2d 193, 206 N.W.2d 414 (1973) and *Cova v. Harley-Davidson Motor Company,* 26 Mich. App. 602, 182 N.W.2d 800 (1970), are not persuasive under the circumstances of this case. Subsequent decisions under Pennsylvania and Michigan law have made it clear that the cases decided under those states' laws cited in the *La Crosse* opinion do not apply to the facts of this case.

*A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 214 N.W.2d 764 (1974) is also relied on by Sunnyslope. *A. E. Investment* involved a tenant who alleged that the defendant had negligently designed and constructed a commercial building. The plaintiff claimed to have incurred damages for past and future profits and loss of other property. The main issue in *A.*

*E. Investment* was whether a general duty to an unknown plaintiff could arise even though the tortfeasor does not know or have any contact with the person harmed. *Id.* at 483.

When determining what damages were recoverable, this court recognized that no policy factors were presented which would prevent recovery and stated, "that, in accordance with the settled negligence law of this state, damages may be awarded for the economic loss ...." *Id.* at 490. However, *A. E. Investment* concerned negligent performance of services and no warranty was involved. The case did not hold that a tort claim existed for economic losses incurred after the purchase of a product when two commercial entities were in privity of contract.

Furthermore, the federal cases interpreting Wisconsin law have also held that *La Crosse* does not apply to the situation in which a commercial purchaser has a warranty from the product's manufacturer. The issue was considered in *Wisconsin Power & Light v. Westinghouse Elec.,* 830 F.2d 1405 (7th Cir. 1987). In that case Westinghouse had sold a transformer to the three utilities which operated the Columbia Power Plant near Portage. The transformer operated for approximately four years before the bushings failed. The bushings in the transformer were covered by an 18–month warranty. Other components of the transformer had a ten-year warranty. Wisconsin Power & Light sought over $1.3 million for the cost of repair under negligence, products liability (strict liability) and misrepresentation theories.

The Seventh Circuit Court of Appeals held that to permit a tort action for economic losses arising out of commercial transactions would thwart the carefully constructed legislative framework governing sales and

commercial relations in the Uniform Commercial Code. That court also stated that to permit such tort theories would undermine the law of sales and make the seller of equipment potentially liable for unbargained for and unexpected risks. The court held that failed economic expectations are a contract claim not a tort claim and should not be recovered through tort claims. *Id.* at 1409–1410. Finally, the Seventh Circuit Court of Appeals found that a warranty between the parties stating that Westinghouse would not be liable in tort for incidental or consequential damages provided an additional, independent basis for granting summary judgment. *See also Twin Disc, Inc. v. Big Bud Tractor,* 772 F.2d 1329 (7th Cir. 1985).

The United States Supreme Court also considered the issue as it arose in admiralty cases. *East River S. S. Corp. v. Transamerica Delaval,* 476 U.S. 858 (1986). In *East River* the plaintiffs had chartered four supertankers which were powered by turbines containing a defective component, a steam reversing ring. The complaint asserted claims for strict liability and negligence and sought only economic damages. The court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Id.* at 871. The United States Supreme Court affirmed the district court's grant of summary judgment dismissing the tort theories.

The court reasoned that in the commercial context litigation over whether a product functions properly arises when a product does not meet the customer's economic expectations—that is, the product is of insufficient value. The question of product value and quality is intended to be addressed by warranties and the Uniform Commercial Code. Contract law, the law of

warranty and the Uniform Commercial Code are designed to allow the parties to allocate the risk of product failure.

The United States Supreme Court reasoned that to inject tort law theories, where the extent of liability depends upon a legally imposed duty not to cause harm, improperly subjects manufacturers to almost limitless claims. "[T]he injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 868.

Since the decision in *East River,* and under facts similar to those presented by this case, state courts and federal courts sitting in diversity cases have rejected tort claims brought for pure economic loss. *See e.g. Florida Power & Light v. Westinghouse Elec.,* 510 So. 2d 899 (Fla. 1987); *Great American Ins. Co. v. Paty's, Inc.,* 154 Mich. App. 634, 397 N.W.2d 853 (1986), *see also Shipco 2295, Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925 (5th Cir. 1987); *Aloe Coal Co. v. Clark Equipment Co.,* 816 F.2d 110 (3d Cir. 1987), *cert. denied* 108 S. Ct. 156; *Cincinnati Gas & Elec. Co. v. General Electric Co.,* 656 F. Supp. 49 (S.D. Ohio 1986).

We hold that a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly, as here, where the warranty given by the manufacturer specifically precludes the recovery of such damages.

*By the Court.* The judgment of the Waukesha county circuit court is affirmed.