**2020 WI APP 23**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2018AP2380

Complete Title of Case:



**MECHANICAL, INC.,**

**PLAINTIFF-RESPONDENT,**

**V.**

**VENTURE ELECTRICAL CONTRACTORS, INC.,**

**DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | April 22, 2020 |
| Submitted on Briefs: | September 12, 2019 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott R. Halloin* of *Halloin Law Group, S.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Roy E. Wagner, Smitha Chintamaneni,* and *Lauren A. Triebenbach* of *von Briesen & Roper, S.C.*, Milwaukee. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2380**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CV1472

**IN COURT OF APPEALS**

---

MECHANICAL, INC.,

PLAINTIFF-RESPONDENT,

V.

VENTURE ELECTRICAL CONTRACTORS, INC.,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Waukesha County: WILLIAM J. DOMINA, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1 NEUBAUER, C.J. At issue in this construction dispute is whether the economic loss doctrine bars a negligence claim seeking purely economic losses—delay damages—by one subcontractor against another with whom there

was no contract. Each subcontractor did enter a subcontract with the general contractor that addressed their individual obligations, duties of care, schedules of work, changes, and remedies for delays. Because the complaining subcontractor's negligence claim is rooted in the duties imposed by the interrelated construction contracts, contract law provides the remedies for the economic loss at issue, foreclosing tort remedies. The economic loss doctrine bars the negligence claim. We affirm.

## BACKGROUND

¶2 Rising three stories high, spreading over 92,000 square feet, the construction project at issue involved $36,436,603 for design, labor, and material work to build an integrated research laboratory addition to the existing Great Lakes Research Facility for the University of Wisconsin-Milwaukee. In 2012, the State of Wisconsin by the Department of Administration, and represented by the Wisconsin Division of State Facilities (State) awarded the prime construction contract to J.P. Cullen & Sons, Inc., as the general contractor. Cullen hired Mechanical, Inc., to install the HVAC systems, and Venture Electrical Contractors, Inc., to install the electrical systems, under separate but similar subcontracts, both dated August 20, 2012. Venture's subcontract was for $4,491,812 and Mechanical's was for $9,190,000.

¶3 Identical in all relevant respects, both subcontracts incorporated the prime contract between the State and Cullen.[1] The subcontracts identified the

---

[1] The subcontractors assumed toward Cullen all duties and obligations Cullen owed under the prime contract to the State to the extent of the subcontractors' work. Cullen had all rights and remedies against the subcontractors that the State had under the prime contract against Cullen.

standard of care: Each subcontractor was required to "use its best care, skill, and diligence in supervising, directing, and performing" its work.

¶4      The subcontracts specified the duties and obligations each subcontractor owed associated with the timely performance of the work, including a schedule of work and a commitment to perform the work in a timely manner.[2] Both subcontracts addressed work and schedule changes in an identical manner.[3]

¶5      Both subcontractors "recognize[d]" that delays could occur. In that event, extensions were to be provided, but that was the subcontractor's "sole remedy." Each subcontractor expressly agreed that it would not be entitled to make a claim for "damages or additional compensation based on delay, hindrance of work, impacts on progress, season changes, disruption, loss of productivity or efficiency, or schedule changes resulting from any cause whatsoever."

¶6      Under its subcontract, Venture sought recovery of over $1,000,000 from Cullen for costs it incurred because of delays and untimely performance. In addition to Mechanical, Venture blamed other subcontractors for its losses. Cullen denied the claim on the grounds that it was untimely, Venture's damages were self-

---

[2] Under the subcontracts, all work was to be performed on schedule and in strict compliance with the plans and specifications. Shop drawings were to be submitted and punch lists completed within specific time limits. The contractor and subcontractors were required to communicate to promptly set the work schedules. Each subcontractor was responsible for its performance, including the "methods, techniques, means, and sequences for coordinating and completing" the work.

[3] If the contractor did not believe the work would be completed timely, the subcontractor was to bear the expense to get it done via overtime, additional shifts, etc.; changes could be made in the schedule without additional compensation; all participants were to cooperate with others and a subcontractor was to immediately advise the general contractor of any interference by another subcontractor.

induced, and the subcontract precluded recovery for delay. Venture did not persist in asserting this claim against Cullen.

¶7 Unrelated to Mechanical's work for Cullen, Venture asked Mechanical to install concrete embeds to support electrical conduit. Mechanical billed Venture $11,961.31 for this work but allegedly did not get paid. When Mechanical subsequently brought this suit against Venture seeking to recover its $11,961.31, Venture counterclaimed in negligence, now seeking almost $1,100,000 for delay-related damages solely from Mechanical.

¶8 Venture alleged that Mechanical owed Venture a duty to comply with Mechanical's schedules under its subcontract and to timely perform its project work. Venture contended that Mechanical's performance was untimely and out of sequence, breaching its duties and causing Venture to incur delay-related losses from overtime hours and cost overruns.

¶9 Mechanical moved for summary judgment dismissal of Venture's negligence claim on the ground that it was barred by the economic loss doctrine. The circuit court granted Mechanical's motion. Venture appeals.

## DISCUSSION

*Standard of Review*

¶10 Under a given set of facts, whether the economic loss doctrine applies to bar a claim and whether a contract is primarily for goods or services are questions of law which we review de novo. *Linden v. Cascade Stone Co.*, 2005 WI 113, ¶5, 283 Wis. 2d 606, 699 N.W.2d 189.

*The Economic Loss Doctrine*

¶11   A judicially created doctrine, the economic loss rule was first adopted in Wisconsin in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989). In *Sunnyslope*, when a backhoe failed to perform properly, the buyer sued the manufacturer in tort, seeking damages for costs of parts, extra labor, and lost profits. *Id.* at 914-15. The manufacturer had provided a limited warranty, which also limited its liability for costs and disclaiming other consequential damages. *Id.* at 913-14. The supreme court rejected the buyer's claim that the manufacturer owed, beyond the warranty, an independent or additional duty to the buyer for the claimed damages. *Id.* at 915. The court held that a buyer cannot recover solely economic losses under a tort theory, particularly when, as in that case, the manufacturer's warranty had addressed and precluded such losses. *Id.* at 921.

¶12   The subject of much litigation since, the economic loss doctrine essentially provides that "a party to a contract may not pursue tort remedies to recover solely economic losses arising out of the performance or nonperformance of the contract." *Ferris v. Location 3 Corp.*, 2011 WI App 134, ¶12, 337 Wis. 2d 155, 804 N.W.2d 822; *see Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶31, 389 Wis. 2d 669, 937 N.W.2d 37 (describing the "upshot" of the doctrine as the requirement that dealing parties must "pursue only their contractual remedies" when seeking economic loss) (citation omitted)). The doctrine was born out of the bedrock distinctions between contract and tort law and the intent to sustain them, and these distinctions arise chiefly from the source of the party's duty. The sources differ markedly. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 404, 573 N.W.2d 842 (1998).

¶13   A struck bargain is the source of the legal obligation imposed in contract law. *See id.* at 404. Aiming to facilitate exchanges and to protect the

5

interests expected by each party to the bargain in allocating risks and costs, contract law holds the parties to their mutual, consensual promises, ensuring that each negotiated benefit is received. *Id.*

¶14 On the other hand, the protection of society is the source of the legal obligations imposed in tort law. *Id.* at 405. "Tort law is rooted in the concept of protecting society as a whole from physical harm to person or property," and it aims to guard against unexpected or overwhelming misfortunes. *Id.*; *Linden*, 283 Wis. 2d 606, ¶7.

¶15 Honoring the distinction between tort and contract law, the economic loss rule generally holds purchasers to their contract remedies for loss to the product or work itself (i.e., economic loss), but not losses due to other property damage or physical injury. *Secura Ins. v. Super Prods. LLC*, 2019 WI App 47, ¶13, 388 Wis. 2d 445, 933 N.W.2d 161. Applicable here, economic losses arising from alleged inadequate performance of a contract include costs associated with delays and lost profits. *Id.*

*The Economic Loss Doctrine Applies to Interrelated Contracts*

¶16 *Sunnyslope* applied the economic loss doctrine to parties in a direct two-party contract. Here, Venture did not have a contract with Mechanical. Venture argues the doctrine is inapplicable because they were contractual strangers with no opportunity to allocate economic risk. We disagree.

¶17 Under Wisconsin law, the economic loss doctrine applies when the claimant seeks economic loss that arises from duties under interrelated contracts, even where there is no direct two-party contractual relationship. *See Linden*, 283 Wis. 2d 606, ¶¶17, 32.

6

¶18    In *Linden*, the supreme court held that the economic loss doctrine applied even if there was no direct contract, or privity, with the defendant when the duties of the defendant arose out of interrelated contracts.   In that case, the contractual relationships were interrelated through a "vertical" chain:   the homeowners contracted with a general contractor to build a house, who in turn contracted with several subcontractors, including one to apply stucco to the exterior and another to place shingles on the roof.  *Id.*, ¶2.  Subsequently, the homeowners sued the general contractor, asserting contract and negligence claims for alleged defects in the house, particularly water infiltration.  *Id.*, ¶3.  They also sued the subcontractors, asserting that the stucco and shingle subcontractors negligently caused the water infiltration damages.  *Id.*

¶19    The supreme court held that the economic loss doctrine precluded the homeowners' claims against the subcontractors.  *Id.*, ¶32.  The court found that the controlling contract was the one entered into between the homeowners and the general contractor, and under that contract the homeowners had the ability to bargain for coverage of the risk of faulty workmanship in any aspect of the house. *Id.*, ¶17.  The homeowners had contractual remedies against the general contractor, who in turn had contractual remedies against the subcontractors.  *Id.*  The court found that, "[a]t its core, the [homeowners'] complaint is that the house they received is not the house for which they contracted."  *Id.* (citation omitted).

¶20    The court applied the economic loss doctrine because permitting the homeowners to sue the subcontractors in tort would erode the distinction between contract and tort law as well as diminish the freedom of contract between the homeowner and the general contractor, as the warranties and remedies worked out between the homeowners and the general contractor would be bypassed by a tort claim against the subcontractors.  *Id.*; *see also Mose v. Tedco Equities—Potter Rd.*

***Ltd. P'ship***, 228 Wis. 2d 848, 851-53, 598 N.W.2d 594 (Ct. App. 1999) (despite absence of privity, economic loss doctrine precluded tort claim of purchaser of contaminated property against prior owner, where purchaser negotiated a reduced purchase price and agreement to remediate with seller/current owner).

¶21     Here, while there is an absence of a vertical relationship indirectly connecting the homeowners and subcontractors the way there was in ***Linden***, this large construction project nonetheless involved multiple interrelated contracts, where each subcontractor allocated its risks, duties, and remedies in their contracts for the project as part of a single comprehensive scheme to construct a building.

> [C]onstruction projects are multi-party transactions, but rarely is it the case that all or most of the parties involved in the project will be parties to the same document or documents.   In fact, most construction transactions are documented in a series of two-party contracts, such as owner/architect, owner/contractor, and contractor/subcontractor.  Nevertheless, the conduct of most construction projects contemplates a complex set of interrelationships, and respective rights and obligations.

*Fundamentals of Construction Law* 4-5 (Carina Y. Enhada et al., eds., 2001).

¶22     As in ***Linden***, the policies underlying the economic loss doctrine in other nonprivity cases are equally applicable here, involving two horizontal subcontractors working on the construction of a building.  Those policies are as follows: "(1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk of economic loss ... to assume, allocate, or insure against that risk." ***Daanen***, 216 Wis. 2d at 403 (the economic loss doctrine precludes a commercial purchaser from recovery in tort from a manufacturer for solely economic losses, where there was a vertical chain of contracts through a distributor).

¶23 Venture asserts the economic loss doctrine does not apply because the subcontracts were for services as opposed to a product, attempting to distinguish its negligence claim against a horizontal subcontractor from the vertical chain of contracts in *Linden*. *See Linden*, 283 Wis. 2d 606, ¶8 (economic loss doctrine does not apply to claims arising from the provision of services). We disagree.

¶24 As established in *Linden*, the analysis is undertaken when the parties have contractual agreements to determine the source of the parties' duties. There, the court identified the applicable contractual bargain in order to determine what the owners-claimants purchased (either a house or services from the subcontractors) and in turn to determine the source of the various contractor's obligations owing to the owners. Here, as discussed below, Venture's claim is squarely based on duties Mechanical owed to Cullen, and in turn, the State.

¶25 The State's purpose in hiring Cullen was to construct a building, just as in *Linden*. Here, the prime contract of the bargaining owner (State) was with the general contractor (Cullen), and indeed, the prime contract was incorporated into each of the subcontracts, explicitly providing that duties and remedies owing between the State and Cullen would also apply to the subcontractors, to the extent of their work. We agree with the circuit court's analysis that the owner contracted to build a $36 million construction project for a building, an addition to the Great Lakes Research Facility.

¶26 The application of the economic loss rule to the general contract, and by extension, these two non-contracting subcontractors, encourages the subcontractors on construction projects with interrelated contracts to protect themselves from risks, holds them to the terms of their bargain, enforces their expectancy interests, and maintains the boundary between contract and tort law. "It

is more appropriate to enforce a bargain than to allow an end run around a contract by using tort principles." ***State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.***, 225 Wis. 2d 305, 329, 592 N.W.2d 201 (1999).[4]

¶27 As in ***Linden***, Venture had the opportunity to address the risk of the economic loss it claims in this case. It had the opportunity to bargain and to define its rights and remedies, allocate risks and costs, or to decline to contract if unsatisfied with the terms. This is a commercially sophisticated party with notice that there were no direct contractual relationships with other subcontractors.

¶28 More to the point, here, Venture decidedly was aware that it would be bound by the duties and remedies associated with delays in its subcontract with Cullen. Venture's subcontract made clear that the subcontractors' work, and potential delays, were interrelated—as a practical matter and by contract. The subcontracts each addressed in identical fashion the claimed breach here, the duties and standards of care: with provisions addressing timeliness, work schedules,

---

[4] Venture largely relies on ***Trinity Lutheran Church v. Dorschner Excavating, Inc.***, 2006 WI App 22, ¶2, 289 Wis. 2d 252, 710 N.W.2d 680, where the economic loss doctrine did not apply in a construction context. In ***Trinity***, a church separately contracted for an addition with one prime contractor to coordinate the construction project and to hire various subcontractors, including an excavator for piping, and then the church separately hired another prime contractor, an excavator, to do the footings. ***Id.***, ¶6. When a damaged lateral resulted in water pouring through the church, the court found that the economic loss doctrine did not bar the contribution claim brought by the church's excavator against the other prime contractor, after the church sued both the excavator and the prime contractor for negligence (which was permitted because its coordinating role rendered it a service provider under the economic loss doctrine). ***Id.***, ¶¶5, 14, 20. The court found there was "no contractual relationship of any kind between the two parties," noting that the two prime contractors were hired independently from one another, coincidentally working on a common project, having their own individual non-interrelated contracts with the church. ***Id.***, ¶¶18, 20. The court found they had no opportunity to negotiate and allocate risk between them for the loss. While the court declined to decide the case on other grounds, we note that the case appears to have involved damage to other property, water damage to the church (the construction project was for an addition) from the damaged water lateral. ***Id.***, ¶¶5, 24, n.6. In contrast, this case involves solely economic loss, and an integrated construction project, with contracts that were interrelated through a bargaining process in which the terms were identical and negotiated as part of a single bid package from Cullen.

changes, and delays, requesting change orders, extensions, and remedies in the event of delays. In short, although their contractual duties ran to Cullen/UWM, the network of interrelated contracts addressed the duties that Mechanical allegedly breached and Venture's rights in the event of delays. We see no reason to free Venture from its contractual bargain and allow it to pursue a tort claim to recover what are effectively contract damages.

¶29 Our conclusion is a natural progression from *Sunnyslope* and its progeny, including *Linden*. However, we find support from various cases with facts similar to those presented here—where there is no privity, or indirect privity through a vertically integrated chain—and the economic loss arises from contractual duties the parties had an opportunity to address. *See, e.g.*, *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 70, 74 (Colo. 2004) (economic loss doctrine precluded tort claims in large construction case involving claim by subcontractor against other contractors with whom there was no privity, where allegedly breached duties were contained within the network of interrelated contracts); *Indianapolis-Marion Cty. Pub. Lib. v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 736, 740 (Ind. 2010) (despite no direct privity, the court determined that the reasons for applying the doctrine to all participants in a "network or chain of contracts in a major construction project are compelling"); *Travelers Indem. Co. v. Crown Corr, Inc.*, 2011 WL 6780885, *11 (D. Ariz. Dec, 27, 2011) (the economic loss doctrine applied to interrelated construction contracts where "the parties have had an opportunity to bargain for their rights").[5]

---

[5] Several of these cases from other states apply the economic loss doctrine to professionals, regardless that they may have independent duties of care distinguishing them from, for example, electrical contractors. We identify these construction cases as exemplars for the application of the economic loss doctrine to noncontracting parties on a construction project involving a network of interrelated contracts. We do not address application to professionals.

¶30    In conclusion, the contract between the owner (State) and the general contractor (Cullen) controls and was for construction of a building for purposes of the economic loss doctrine.  Regardless of the absence of a vertical chain of contracts between the horizontal subcontractors, the economic loss doctrine bars a negligence claim for economic loss solely between them.  The network of interrelated contracts contained their duties of care and contractual remedies.  Thus, there is no independent tort duty owing from Mechanical to Venture to timely perform its contract with Cullen, or to avoid the risk of economic loss to Venture.  Finding otherwise would eliminate the contract/tort distinction.  It would undermine the expectancy protection afforded to Cullen and Mechanical when they agreed upon and defined the duties, risks, and costs.  Finally, letting Venture ignore its own contract to prosecute a tort claim would discourage other parties who are typically best situated to evaluate the risk of economic loss and take appropriate measures.  Because the reasons for the doctrine are present, the doctrine bars the tort claim.[6]

---

[6] Venture cites to **Hatleberg v. Norwest Bank Wisconsin**, 2005 WI 109, 283 Wis. 2d 234, 700 N.W.2d 15, and **Milwaukee Partners v. Collins Engineers, Inc.**, 169 Wis. 2d 355, 485 N.W.2d 274 (Ct. App. 1992), and the RESTATEMENT (SECOND) OF TORTS § 552 (1977), which relates to a professional incurring liability for supplying false information.  This case involves neither. Venture's reference to the RESTATEMENT (SECOND) OF TORTS § 324A is equally inapplicable as there is no physical injury at issue here.

*By the Court.*—Order affirmed.