**BUDGETEL INNS, INC., Plaintiff,**

**v.**

**MICROS SYSTEMS, INC., and Fidelio Software Corporation, Defendants.**

No. 97–C–301.

United States District Court,
E.D. Wisconsin.

June 22, 1998.

Charles H. Barr, Croen & Barr, Milwaukee, WI, Theodore J. Cohen, Spolin & Silverman, Santa Monica, CA, for plaintiff.

William H. Levit Jr., Godfrey & Kahn, Raymond J. Manista, Godfrey & Kahn, Milwaukee, WI, for defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

This case involves an important unresolved issue in Wisconsin law: whether the Wisconsin Supreme Court would apply the economic loss doctrine—which bars tort claims arising out of commercial contract disputes—to preclude a claim of fraudulent inducement to enter into a contract.

In this case, Budgetel alleges that it was induced into signing an agreement with defendant Micros System, Inc. only because Micros made certain promises, which it had no intention of performing. Defendants argue that even if plaintiff's allegations of fraud in the inducement are true, the economic loss doctrine requires that plaintiff's fraud claim be dismissed. I conclude that the Supreme Court of Wisconsin would say Budgetel's fraud claim is not barred by the economic loss doctrine.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Budgetel, which operates a chain of hotels, was in the market to purchase a new software system to handle its increasingly complicated property management system. Defendant Micros touted its 8500 system as being both brand new and ideally suited to meet Budgetel's needs. On March 11, 1993, Budgetel and Micros entered into a contract pursuant to which Micros was to supply Budgetel with property management system software, system support, and maintenance, in exchange for a license fee of $250,000 and ongoing maintenance and support fees of about $150,000 per year. Micros also was to provide Budgetel with future releases of the 8500 software and interfaces between that software and other software systems used in the lodging industry.

About three months after signing the contract, however, Budgetel learned that Micros had acquired an interest in defendant Fidelio Software Corporation, that it was no longer marketing the 8500 software and that Micros's sales personnel were being reassigned to promote Fidelio's system instead. Over the course of the next year or two, Micros dramatically reduced the personnel available to provide Budgetel with support and maintenance assistance for the 8500 system.

On March 25, 1997, Budgetel filed this case alleging, among other things, that Micros knew of its Fidelio plans prior to contracting with Budgetel and that it fraudulently induced Budgetel into buying the 8500 software, which Micros planned to eliminate.

The case was randomly assigned to Magistrate Judge Patricia J. Gorence pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 13.03. Following a motion to dismiss by defendants, Magistrate Judge Gorence recommends dismissal of four counts of the complaint: (1) fraud (i.e. intentional or fraudulent misrepresentation), (2) negligent misrepresentation, (3) violation of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and (4) violation of the Wisconsin Organized Crime Control Act (WOCCA), Wis.Stat. § 946.80 et seq. As to the two misrepresentation counts Magistrate Judge Gorence based her recommendation on the economic loss doctrine. Budgetel objected only to the portion of the recommendation advising dismissal of the fraud claim as barred by the economic loss doctrine. Defendants have responded to Budgetel's objections and the matter is now ready for my consideration.

■ A district court must review de novo recommendations of the magistrate judge to which either party timely objects. 28 U.S.C. § 636(b)(1)(C); United States v. Raddatz, 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Any other aspect of the recommendation may be reviewed de novo as the district court sees fit. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). As to the recommendation to dismiss the RICO, WOCCA and negligent misrepresentation claims to which plaintiff did not object, I have reviewed them, concur with them and accept them without modification. No further discussion of those counts is required.

## II. THE ECONOMIC LOSS DOCTRINE

■ Wisconsin substantive law governs Budgetel's state-law fraud claim. In evaluating the viability of the claim, I apply the substantive law as declared by Wisconsin's highest court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If Wisconsin law is unclear because the Supreme Court of Wisconsin has not spoken on the issue, my task is to predict how that court would decide the question today. Rodman Indus., Inc. v. G & S Mill, Inc., 145 F.3d 940, 942 (7th Cir.1998). Absent guidance from any Wisconsin courts, I may look to other jurisdictions to predict how the Supreme Court of Wisconsin would decide the issue. King v. Damiron Corp., 113 F.3d 93, 95 (7th Cir.1997). Federal courts sitting in diversity, however, must be circumspect in expanding the boundaries of established state jurisprudence; we should hesitate to expand state law in the absence of any indication of intent by the state courts or legislature. Id. at 97.

### A. The Economic Loss Doctrine and Why It Exists

■ "Economic loss" is "defined generally as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for

which it was manufactured and sold.' " *Northridge Co. v. W.R. Grace & Co.*, 162 Wis.2d 918, 925–26, 471 N.W.2d 179 (1991) (quoting Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?,* 114 U.Pa.L.Rev. 539, 541 (1966)). "Economic loss" encompasses direct economic loss, based upon the difference in value between what was received as compared to what was represented, together with costs of replacement and repair. It also includes consequential, or indirect, economic losses attributable to the product defect, such as lost profits resulting from the inability to make use of the product. *Northridge,* 162 Wis.2d at 926, 471 N.W.2d 179 (citing Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966)).

[redacted] The "economic loss doctrine" is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer under tort theories damages that are solely economic losses. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis.2d 394, ——, 573 N.W.2d 842, 844–45 (1998). When contractual expectations are frustrated because of a defect in the subject matter of a contract, a party's remedy instead lies exclusively in contract. *Raytheon Co. v. McGraw–Edison Co.*, 979 F.Supp. 858, 866 (E.D.Wis.1997).

[redacted] The doctrine does not bar claims involving physical injury or physical harm to property, however, as those are considered proper tort claims. *Daanen,* 216 Wis.2d at ——, 573 N.W.2d at 845. Judge Barbara B. Crabb of the Western District of Wisconsin has given a good example of the use of the doctrine. If a lawn mower fails to work as intended and throws off a piece of metal, which lands in the operator's eye causing him to miss work and incur medical losses, those injuries can be recovered by a tort action. If, however, the lawn mower malfunctions, causing it to wear out in a short time and requiring repair or replacement, that is economic loss barred by the doctrine; the mower's owner may sue only in contract. *Wausau Paper Mills Co. v. Chas. T. Main, Inc.,* 789 F.Supp. 968, 971 (W.D.Wis.1992).

The United States Supreme Court's decision in *East River S.S. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) encouraged acceptance of the doctrine and the perceived need to separate tort claims from contract claims. *East River* involved supertankers that malfunctioned at sea because of manufacturing defects in the turbines. The plaintiffs, who had chartered the super-tankers, sued the turbine manufacturer in negligence and strict liability for economic losses. The Supreme Court rejected the tort claims, holding that a manufacturer in a commercial relationship has no duty outside of contract "to prevent a product from injuring itself." *Id.* 476 U.S. at 871, 106 S.Ct. 2295. According to the Court, "loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.* 476 U.S. at 870, 106 S.Ct. 2295. The Court justified its decision as necessary to protect contract law from "drown[ing] in a sea of tort." *Id.* 476 U.S. at 866, 106 S.Ct. 2295.

As Judge Crabb has noted, the basic theory of the doctrine is straightforward:

> Commercial entities are capable of bargaining to allocate the risk of loss inherent in any commercial transaction. Courts should assume that parties factor risk allocation into their agreements and that the absence of comprehensive warranties is reflected in the price paid. Permitting parties to sue in tort when the deal goes awry rewrites the agreement by allowing a party to recoup a benefit that was not part of the bargain.

*Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F.Supp. 1227, 1230 (W.D.Wis.1997).

The rule's merits are not universally accepted. Detractors have suggested that because even tort law reduces physical injury to monetary damages the distinction between physical injury and economic losses is a fiction, F. Malcolm Cunningham, Jr. and Amy L. Fischer, *The Economic Loss Rule: Deconstructing the Mixed Metaphor in Construction Cases,* 33 Tort & Ins. L.J. 147, 148 (1997), that the rule penalizes prudent conduct by requiring a plaintiff to await physical injury before being able to recover, *id.*, or that the basis for the doctrine is merely

judicial economy, as it is a bright-line rule to be applied as a matter of law, *see* Geri Lynn Mankoff, *Florida's Economic Loss Rule: Will It Devour Fraud in the Inducement Claims When Only Economic Damages Are at Stake?*, 21 Nova L.Rev. 467, 471 (1996).

## B. Status of the Doctrine in Wisconsin Courts

 The Supreme Court of Wisconsin expressly adopted the economic loss doctrine in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis.2d 910, 921, 437 N.W.2d 213 (1989). In *Sunnyslope*, the Wisconsin high court held that a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories where a warranty given by the manufacturer precluded such damages. In *Daanen*, the court removed the qualification, holding that even in the absence of privity the doctrine bars a commercial purchaser from recovering economic losses from a manufacturer under tort theories of strict liability and negligence. *Daanen*, 216 Wis.2d at ——, 573 N.W.2d at 844, 850–51.

The Supreme Court of Wisconsin accepts the merits of and reasoning behind the rule. According to the court, application of the economic loss doctrine to tort actions between commercial parties is generally based on three policies:

> (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.

*Daanen*, 216 Wis.2d at ——, 573 N.W.2d at 846.

In regard to the tort versus contract distinction, the court said that while contract law rests on obligations imposed by bargain, the law of torts rests on obligations imposed by law. While contract law seeks to hold commercial parties to their promises, ensuring that each party receives the benefit of their bargain, tort law protects society's interest in human life, health, and safety. *Id.* at ——, 573 N.W.2d at 846–47.

In regard to protecting the parties' allocation of risk, the court stated that if a commercial purchaser is given a direct cause of action in tort against a manufacturer, the entire risk of economic loss is borne by that manufacturer. Limitations in warranties would be meaningless. *Id.* at ——, 573 N.W.2d at 847–48. Without the economic loss doctrine, a purchaser would be encouraged to purchase goods "as is" in exchange for a lower price. If the product failed down the road and the purchaser could nevertheless reach back to the manufacturer for tort damages, the purchaser would obtain more than the benefit of the bargain to which it agreed and for which it paid. The law of contracts would be emasculated in the process. *Id.* at ——, 573 N.W.2d at 848.

And finally, in regard to the purchaser being better suited to assess and address the risk, the court indicated that manufacturers cannot accurately predict the scope or purposes for which its goods will be used by all purchasers, nor can they assess a particular purchaser's disappointed economic expectations. Manufacturers thus would face unknown liability against which it would be difficult and inefficient to insure. The purchaser at least can anticipate problems and demand particular warranties to address them or insure against the risk. *Id.* at ——, 573 N.W.2d at 849. Moreover, holding manufacturers liable for such tort claims would force the public as a whole to bear the cost of losses sustained by purchasers who failed to bargain adequately, as manufacturers would merely raise prices for all consumers to cover their liability costs. *Id.* at ——, 573 N.W.2d at 849–50.

## C. Federal Court Predictions on the Doctrine's Application in Wisconsin

 The Supreme Court of Wisconsin and lower Wisconsin courts have not yet addressed several questions regarding application of the economic loss doctrine. The Seventh Circuit and district courts within this state have made some predictions, however.

For instance, the Supreme Court of Wisconsin expressly reserved the question whether the economic loss doctrine applies with equal force to damages resulting from

the provision of services. *Daanen,* 216 Wis.2d at ——, 573 N.W.2d at 851–52. The Seventh Circuit, though, which I must follow, has predicted that Wisconsin courts will apply the doctrine to services when the parties have a contractual relationship and the injury is based on that relationship. *See Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1300–01 (7th Cir.1991) (claim of negligence in administering services contract held barred by economic loss doctrine). Judge Crabb in the Western District has held the same where there is a warranty and a contractual relationship between two sophisticated parties. *Wausau,* 789 F.Supp. at 974.

The application of the doctrine to misrepresentation or intentional tort claims in general, and intentional misrepresentation claims in particular, has not been addressed by the state courts, either. Again, the Seventh Circuit has made some predictions. In *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 628 (7th Cir.1993), the Seventh Circuit predicted that Wisconsin would not permit negligent or strict liability misrepresentation claims to recover economic damages if the claims were related to the parties contractual relationship. And in *Cooper Power Systems, Inc. v. Union Carbide Chemicals & Plastics Co.,* 123 F.3d 675, 682 (7th Cir.1997), the Seventh Circuit said it saw no basis for treating intentional misrepresentation differently than other misrepresentation claims. *Cooper,* 123 F.3d at 682.

That was a big jump. While, as discussed below, Michigan and Florida have made that leap, Illinois, for instance, has not. *See Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 88, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) (indicating economic loss theory does not apply where plaintiff's damages are proximate result of defendant's intentional, false representation).

Prior to *Cooper,* Judge Crabb had analyzed the practical and public policy implications of applying the economic loss doctrine to intentional misrepresentation claims. *Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F.Supp. 1227, 1230 (W.D.Wis.1997). She concluded that a party to a contract could not rationally calculate the possibility that the other party would deliberately lie, that parties in reality could not negotiate contractual

provisions allocating responsibility for lies without souring a deal from the start, and that public policy would be better served by leaving a possible intentional tort suit hanging over the head of a party considering outright fraud. Judge Crabb was satisfied that the Wisconsin Supreme Court would *not* extend the doctrine to the intentional tort of fraudulent misrepresentation. *Id.* Stoughton, though, has been effectively overruled on this point by *Cooper.*

*Ollerman v. O'Rourke Co.,* 94 Wis.2d 17, 288 N.W.2d 95 (1980), supports a prediction that Wisconsin courts would not apply the economic loss doctrine to intentional misrepresentation claims. In its pre-*Sunnyslope* discussion of possible limitations on negligence claims where only economic losses are involved, the Supreme Court of Wisconsin contrasted negligent misrepresentation with fraud:

> [T]he draftsmen of the Restatement of Torts (Second), in discussing liability for information negligently supplied for the guidance of others in their business transactions, caution that the scope of liability for failing to exercise reasonable care in supplying correct information is not determined by the rules that govern liability for the negligent supplying of chattels that imperil the security of persons or property or other negligent misrepresentation that results in physical harm. *When there is no intent to deceive,* but only negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences. *The reason a narrower scope of liability is fixed for negligent misrepresentation than for deceit* is to be found in the difference between the obligations of honesty and of care, and in the significance of this difference to the reasonable expectations of the users of information that is supplied in connection with commercial transactions.

*Id.* at 50, 288 N.W.2d 95 (quoting *Restatement (Second) of Torts* § 552 cmt. a (1977) (emphasis added)).

With no discussion of *Ollerman,* Wisconsin's concerns for public policy, or the resulting elimination of any duty of good faith and

fair dealing in contract negotiations, the *Cooper* court found no reason to treat intentional misrepresentation claims differently from negligent and strict liability claims, stating merely that

> This court, however, has already predicted that Wisconsin would not allow a negligence or strict liability misrepresentation claim seeking to recover economic damages. . . . We perceive no basis for treating Cooper's intentional misrepresentation claim any differently. . . . Misrepresentations such as these, that ultimately concern the quality of the product sold, are properly remedied through claims for breach of warranty. Cooper could have and maybe did . . . extract an express warranty from PFI to remedy any misrepresentations related to product quality.

*Cooper*, 123 F.3d at 682 (footnote omitted). While this holding expanded state law in the absence of any indication of intent by the state courts, to *Cooper* this court nevertheless is bound.

### D. The Fraud in the Inducement Exception

#### 1. Budgetel's Argument

▆ Budgetel does not dispute that the damages it claims are "economic losses" as defined by Wisconsin law. Neither does Budgetel dispute the application of the economic loss doctrine to its service contracts with Micros, even in light of the Wisconsin Supreme Court's express reservation of the issue in *Daanen*.[1] Also, in light of *Cooper*, Budgetel does not argue that the economic loss doctrine should not apply to intentional misrepresentation claims. Budgetel accepts that this court must follow *Cooper*.

Budgetel argues instead that its claim falls within an exception to the economic loss rule as applied to intentional torts—an exception for fraud in the inducement. As stated above, Wisconsin courts have not addressed whether the doctrine applies to intentional torts, let alone whether any exception exists for fraud in the inducement. Nor has the Seventh Circuit addressed whether fraud in the inducement is an exception to *Cooper's*

holding that intentional misrepresentation claims are barred.

### 2. Decisions From Other Courts

The leading case in this area is *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995), in which the Michigan Court of Appeals recognized an exception to the economic loss rule for fraud in the inducement, i.e. where one party was tricked into contracting. *Id.* 209 Mich.App. at 370–71, 532 N.W.2d 541.

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate. freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior.

*Id.* 209 Mich.App. at 372–73, 532 N.W.2d 541.

But even though the *Huron* court adopted an exception for fraud in the inducement claims, it nevertheless carved out an exception to the exception. The court stated that if the fraud in an inducement claim involves the actual subject matter of the contract the claim remains barred by the economic loss doctrine.

> [W]here the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.

The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. . . . With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the con-

---

1. As Budgetel has not objected to the application of the doctrine to service contracts, I am not going to revisit the issue and reassess *Midwest*

*Knitting* and *Wausau* in light of the Wisconsin court's subsequent reservation in *Daanen*.

tract and do not give rise to an independent cause of action in tort.

\* \* \* \* \* \*

... We hold that plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract. *Id.* 209 Mich.App. at 373, 374, 532 N.W.2d 541 (citation omitted). In other words, said the court, when a claim of fraudulent inducement is "interwoven" with a breach of contract claim, no independent intentional misrepresentation claim exists and the claim will be barred by the economic loss doctrine. *See id.; see also Martin v. A.O. Smith Corp.,* 931 F.Supp. 543, 547 (W.D.Mich.1996) (noting that under *Huron* the exception applies only where the alleged misrepresentations do not concern the quality or character of the goods that are the subject of the parties' contractual agreement).

Another influential case on the issue comes from Florida. In *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla. 1996), the Supreme Court of Florida found that the economic loss rule does not eliminate causes of action based upon torts that are independent of a contractual breach, and that fraudulent inducement constitutes an independent tort because "it requires proof of facts separate and distinct from the breach of contract." *Id.* at 1239. While *HTP* did not itself require discussion of any limitation upon the fraud in the inducement exception because the existence of such fraud was assumed for purposes of the opinion, the Florida high court nevertheless expressly agreed with the distinction drawn by *Huron* between fraud extraneous to the contract and fraud interwoven with the breach of contract. *Id.* at 1239–40.

Subsequent Florida cases have followed *Huron* and have expressly adopted its limitation on the fraud in the inducement exception. In *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74 (Fla.Ct.App.), *review denied,* 700 So.2d 685 (Fla.1997), for instance, the Florida Court of Appeals found that

> where the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of "fraudulent inducement" to a cause of action will not suffice to subvert the sound policy

rationales underlying the economic loss doctrine.

\* \* \* \* \* \*

... If we are to say, as some urge, that because fraud in the inducement is an "independent tort" (as opposed to independent of the contract) it is never barred by the economic loss rule, then the matter is resolved by a "bright line" test. But that ignores the distinction set forth in *Huron* .... Would it not be more in keeping at least with the spirit of the original economic loss cases to consider the relationship between the inducing representation and the essential requirements, expressed or implied, of the contract agreed to by the parties?

*Id.* 694 So.2d at 77–78 (internal quotation marks and cite omitted).

In *Raytheon Co. v. McGraw–Edison Co.,* 979 F.Supp. 858, 870 (E.D.Wis.1997), Judge Rudolph T. Randa noted the trend of these other states toward recognizing an exception to the economic loss doctrine for fraud in the inducement claims, but only where the claims arise independent from the underlying contract. Judge Randa carefully analyzed *Huron, HTP,* and *Hotels of Key Largo* and certain language from Wisconsin courts in cases not involving the economic loss doctrine. For instance, in *Landwehr v. Citizens Trust Co.,* 110 Wis.2d 716, 723, 329 N.W.2d 411 (1983), the Supreme Court of Wisconsin held that there is no claim of negligence for failure to execute a will pursuant to a contractual agreement because "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." As decedent was free not to make a will unless there was an enforceable contract, plaintiff's negligence claim had to be dismissed. *Id.* 110 Wis.2d at 724, 329 N.W.2d 411. And in *Nelson v. Motor Tech, Inc.,* 158 Wis.2d 647, 462 N.W.2d 903 (Ct. App.1990), in which a distinction between tort and contract actions had to be made for purposes of insurance coverage, the Wisconsin Court of Appeals indicated that

> in order to proceed in a tort action when the parties' relationship is defined by a contract, there must be a duty in common law independent from any duty created by the contract. In applying this test, the

existence of a contract is ignored when determining whether the alleged misconduct is actionable in tort.

*Id.* 158 Wis.2d at 653, 462 N.W.2d 903. Based upon these cases Judge Randa predicted that the Wisconsin Supreme Court would adopt the fraud in the inducement exception to the economic loss doctrine as limited by *Huron, HTP,* and *Hotels of Key Largo. Raytheon,* 979 F.Supp. at 872–73.

### 3. The Problem With *Huron's* Limitation on the Fraud in the Inducement Exception

The limitation of the fraud in the inducement exception to claims not "interwoven" with nor involving the "quality or character" of the subject matter of the contract, as imposed by the *Huron, HTP,* and *Hotels of Key Largo* courts (I'll refer to it as the *"Huron* limitation" for simplicity), is seriously flawed.

#### a. The Limitation's Practical Effect

In practice, the *Huron* limitation renders the fraud in the inducement exception a nullity. The *Huron* limitation to the fraud in the inducement exception is so broad that it swallows the exception whole.

In all cases cited by the parties and researched by the court, use of the *Huron* limitation eliminated the claims of fraud in the inducement. For instance, after discussing the fraud in the inducement exception with the *Huron* limitation, the *Huron* court itself found that the plaintiff's fraud claim was not viable apart from its contract claims:

> The fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached. . . . Because plaintiff's allega-

tions of fraud are not extraneous to the contractual dispute, plaintiff is restricted to its contractual remedies under the UCC. *Huron,* 209 Mich.App. at 375, 532 N.W.2d 541. In *Martin,* defendants knowingly misrepresented the oxygen-limiting or air-tight capabilities of Harvestore silos when selling them to farmers. A Michigan district court found that the allegations of intentional misrepresentation concerned solely the quality and character of the silos and plaintiffs could have negotiated for protection against them. As a result, the court found no assertable claim for fraud in the inducement. *Martin,* 931 F.Supp. at 547. In a second lawsuit alleging that a salesman fraudulently represented that Harvestore silos were oxygen-limiting, another district court in Michigan, following *Huron,* found the fraud claim similarly barred:

> The allegedly fraudulent misrepresentations that induced the plaintiffs to use Harvestore silos "concern the quality and characteristics" of the Harvestore silos as being airtight and, therefore, more beneficial in preserving ensiled feed. . . . Plaintiffs' fraud claims are inextricably connected to the "quality or character" of the silos about which plaintiffs could have negotiated a warranty and other terms to account for possible defects in the goods or nonperformance. Clearly, the defendants['] representations were not extraneous to the quality and characteristics of the silos.

*Valleyside Dairy Farms, Inc. v. A.O. Smith Corp.,* 944 F.Supp. 612, 617 (W.D.Mich.1995). In *Hotels of Key Largo,* where the plaintiffs claimed that the defendants' inducing promises regarding participation in a worldwide hotel reservation system were lies, the court found the claims inseparable from the heart of the contractual agreement and thus barred. *See Hotels of Key Largo,* 694 So.2d at 78.[2]

---

**2.** The court found only one case where a court declined to apply the economic loss doctrine because of fraud in the inducement, and even in that case, if the court had applied the *Huron* limitation correctly, the fraud claim should have been barred. In *Randolph v. Mitchell,* 677 So.2d 976 (Fla.App.1996), a Florida appellate court found the economic loss rule did not preclude a claim for fraudulent inducement against an insurance agent where the agent represented that the policy sold to the plaintiff would provide the same or better coverage than her previous policy

for a lower premium. The scope of coverage seems inseparable from the quality and characteristics of the policy, so the claim should have been dismissed. The case perhaps can be explained as an equitable decision for poor consumers battling insurance companies, as Florida applies the economic loss rule even to individual consumer transactions. *See Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244 (Fla.1993) (economic loss rule applied to

### b. The Limitation is Based on a Misunderstanding of Fraud in the Inducement

The *Huron* limitation suggests a misunderstanding of the tort of fraud in the inducement. In all fraud in the inducement cases the alleged fraudulent misrepresentations will either concern the quality and characteristics of the underlying subject matter, because that is the definition of "fraud in the inducement" itself. See Black's Law Dictionary at 661 (6th ed.1990), in which "fraud in the inducement" is defined as "[m]isrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken." As described by the Restatement, "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." *Restatement (Second) of Torts* § 530(1) (1977). Because the contract concerning the "particular thing" will always be considered "interwoven" with the deceit under *Huron*, fraud in the inducement claims will always be barred. The tort, after all, is inducing someone to enter into a contract, so to say it does not apply where the tort involves the contract or its subject matter analytically makes no sense.

But while in one sense the tort of fraud in the inducement is always "interwoven" with a contract, in another sense the tort is always independent of the contract. That is, the *duty* out of which the tort arises is always based in common law and never in the contract. This is exactly the independence that is required by *Landwehr*. Even though a duty of good faith and fair dealing exists both with respect to the creation and performance of a contract, Wis JI–Civil 3044 (1997) (all contracts impose upon parties a duty of good faith and fair dealing at every point from negotiation through performance); *see In re Chayka's Estate*, 47 Wis.2d 102, 107–08 n. 7, 176 N.W.2d 561 (1970), fraud in the inducement by definition occurs prior to the formation of the contract itself, thus, it never constitutes a breach of contract. Man-

koff, *supra*, at 480. On the other hand, fraud in the performance of a contract is not an independent tort because the duty giving rise to the tort is established by the contract. *Id.*

The most obvious way to distinguish an independent tort from a breach of contract is by determining when the alleged independent tort took place. *Id.* Typically, causes of action that arise before entering into a contract constitute independent torts because no duty has yet been created under the contract. Therefore, the duty that has been breached must lie in tort. *Id.* The fact that the tort by definition also relates to the signing of a contract does not alter the fact that by the time the contract is signed the action causing the tort has already occurred.

The Wisconsin high court in fact has already recognized that fraud in the inducement is completely separate from the resulting transaction. After indicating that the difference between intentional and negligent misrepresentation is the difference between the obligations of honesty and of care, the *Ollerman* court found that

> [h]onesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says. *The standard of honesty is unequivocal and ascertainable without regard to the character of the transaction in which the information will ultimately be relied upon* or the situation of the party relying upon it.

*Ollerman*, 94 Wis.2d at 50, 288 N.W.2d 95 (quoting *Restatement (Second) of Torts* § 552 cmt. a (1977) (emphasis added)).

There is a considerable difference between a promise never intended to be performed (fraud in the inducement) and a promise intended to be performed but which ultimately is not (breach of contract). One of the essential elements of a contract is that the parties entered into it freely and without assent obtained through fraud. *See Nauga, Inc. v. Westel Milwaukee Co.*, 216 Wis.2d 305, ——, 576 N.W.2d 573, 576–77 (Ct.App. 1998). The problem with the *Huron* limita-

claims of individual homeowners regarding de-

fects in construction).

tion is that it transforms a claim that a contract is invalid because procured by fraud into a dispute about the terms of a contract. An outright lie to induce a party to enter a contract differs substantially from a broken contractual promise. Courts and contracting parties should be able to distinguish the two.

Prior to *Huron* and *HTP,* the Eleventh Circuit saw no need to limit the fraud in the inducement exception based, upon whether such a claim was closely connected with contract claims. *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.,* 60 F.3d 734 (11th Cir.1995) (no mention of limitation on exception and case allowed to go to trial even where representations concerned heart of lawsuit). I agree with the Eleventh Circuit, and think *Huron, HTP,* and *Hotels of Key Largo* headed down an illogical path.

The heightened pleading standard and the higher burden of persuasion that apply to fraud claims as well as the difficult nature of proving another party's intent, are themselves sufficient safeguards against meritless fraud in the inducement claims. It is unnecessary to invoke the economic loss doctrine for this purpose.

### c. The *Huron* Limitation Conflicts With the Policies Underlying the Economic Loss Doctrine

Moreover, the *Huron* limitation fails to further the policies underlying Wisconsin's economic loss rule. With respect to the policy of maintaining a distinction between tort and contract law, the *Huron* limitation, because it effectively swallows the fraud in the inducement exception whole, does not merely maintain a distinction; it instead eliminates tort law in favor of contract law. A fraud in the inducement exception without the *Huron* limitation constitutes a better, bright-line rule because it does not require courts to ask the murky "interwoven" question.

Concerning the policy of protecting the freedom of commercial parties to allocate economic risk by contract, the *Huron* limitation actually hinders the parties' freedom to

contract. As Judge Crabb noted in *Stoughton,* contract negotiations that begin with the assumption that the other party is lying will hardly encourage free and open bargaining. The specific duty encompassed by fraud in the inducement is the duty of the parties entering into the contract to speak honestly regarding negotiated terms. How can parties freely allocate risk if they cannot rely on the opposite party to speak truthfully during negotiations regarding the subject matter of the contract—if they cannot tell what is a lie and what is not? In addition, the goal of encouraging allocation of the risk of fraud bumps into competing policy concerns regarding the appropriate use of liquidated damages.[3]

Finally, the *Huron* limitation undermines the policy of encouraging the commercial purchaser, as the party best situated to assess the risk of economic loss, to assume, allocate, or insure against that risk. When a seller is lying about the subject matter of the contract, the party best situated to assess the risk of economic loss and allocate the risk is not the buyer, who cannot possibly know which of several statements may be a lie, but rather the seller, who clearly knows. The rationale that sophisticated, contracting parties can and should protect themselves is flawed where fraud in the inducement exists. Due diligence cannot ensure against intentional dishonesty. Theresa Montalbano Bennett, *Lies and Broken Promises: Fraud and the Economic Loss Rule after Woodson v. Martin,* 70 Fla.B.J. 46, 48 (May 1996). Yet the innocent nonbreaching party would bear the burden of trying to police deceitful activity that society as a whole abhors. The absence of a tort remedy—and thus the absence of possible punitive damages—for the duped party would reward a liar's deceit, yet "no interest of society is served by promoting the flow of information not genuinely believed by its maker to be true." *Ollerman,* 94 Wis.2d at 51, 288 N.W.2d 95 (quoting

---

3. Liquidated damages as compensation for lies may face enforceability problems because they may be considered a penalty. *See Wassenaar v. Panos,* 111 Wis.2d 518, 529–30, 331 N.W.2d 357 (1983) (although ultimate test is one of reasonableness under totality of circumstances, factors to consider are whether parties intended liquidated damages as a penalty, whether injury is difficult to estimate accurately at time of contract, and whether stipulated damages are a reasonable forecast of harm caused by the breach).

*Restatement (Second) of Torts* § 552 cmt. a (1977)).

### 4. This Court's Prediction Regarding a Fraud In the Inducement Exception

I predict that *if* the Supreme Court of Wisconsin applied the economic loss doctrine to intentional misrepresentation claims, it would provide an exception for fraud in the inducement, following *Huron, HTP,* and *Hotels of Key Largo* to that extent only. The Supreme Court of Wisconsin has followed Michigan economic loss doctrine case law before. *See Daanen,* 216 Wis.2d at ——, 573 N.W.2d at 847 (quoting and accepting the reasoning of the Michigan Court of Appeals in regard to whether the economic loss doctrine requires privity of contract). Plus, the Supreme Court of Wisconsin has recognized the parties' need for a background of truth and fair dealing. *See id.* 216 Wis.2d at ——, 573 N.W.2d 842, ("Subject to requirements of good faith and unconscionability, a manufacturer can negotiate with its distributors and purchasers to disclaim or limit its liability for economic losses."). According to the court, any user of commercial information may reasonably expect honesty from the supplier of such information. *Ollerman v. O'Rourke* 94 Wis.2d at 50–51, 288 N.W.2d 95.

I predict, however, that the *Huron* limitation would not tag along—that Wisconsin would *not* adopt the *Huron* limitation on the fraud in the inducement exception. I think the Supreme Court of Wisconsin would decline to adopt a limitation that, as described above, swallows whole the exception it modifies. Rather, I believe the court would find that fraud in the inducement claims as a rule are not barred by the economic loss doctrine.

The magistrate judge follows *Raytheon, Huron,* and *HTP* regarding both the fraud in the inducement exception and the *Huron* limitation. She concludes that Budgetel's claim of intentional misrepresentation is "interwoven" with the contract claims, and as a result, is barred by the *Huron* limitation. Recommendation at 15–16. As I disagree, I will decline to adopt the magistrate judge's recommendation to dismiss the claim.

### 5. Plaintiff's Specific Allegations of Fraud

■ Not all of plaintiff's allegations of fraudulent misrepresentation involve fraud in the inducement, however. Plaintiff alleges that at a meeting in January 1994 the Chairman of Micros made the fraudulent statement that "[Micros] will make it right for you. We wouldn't drop you—you're a good customer. We wouldn't sell you a product and then drop you." Complaint at ¶ 34. This representation does not involve fraud in the inducement at all. After the contract's execution no duty existed independent of the contract to maintain plaintiff as a customer. This misrepresentation concerns solely defendants' performance under the agreements and relates to duties set forth therein. It therefore is not independent of the contractual obligations and thus indeed is barred by the economic loss doctrine.

### III. THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b)

The remainder of Budgetel's fraud claims also do not necessarily survive defendants' motion to dismiss. Defendants argue as an alternate reason for dismissal that plaintiff's claim of fraudulent misrepresentation fails to meet the requirements of Federal Rule of Civil Procedure 9(b), which states that in all complaints alleging fraud, "the circumstances constituting fraud ... shall be stated with particularity."

■ In Wisconsin, a claim of intentional misrepresentation consists of five elements: (1) defendant made a representation of fact, (2) such representation was untrue, (3) defendant made such representation knowing it was untrue or recklessly without caring whether it was true or false, (4) defendant made the representation with the intent to deceive and induce plaintiff to act upon it to plaintiff's pecuniary damage, and (5) plaintiff believed such representation to be true and justifiably relied on it. Wis. JI–Civil 2401 (1997).

■ Because accusations of fraud can seriously harm a business or reputation, rule 9(b) is meant to ensure that a plaintiff has

some basis for its accusations of fraud before making them, thus discouraging a plaintiff from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes. *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 924 (7th Cir.1992). The rule focuses on identifying the representation of fact itself. Thus, while rule 9(b) does not require a plaintiff to plead facts that would show that the alleged misrepresentations were indeed false, it

> does require the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.... In other words, the plaintiff must plead the "who, what, when, and where" of the alleged fraud.

*Id.* 974 F.2d at 923 (quotation marks and citation omitted).

 The complaint contains numerous references to allegedly fraudulent conduct by defendants. In response to defendants' motion to dismiss, however, plaintiff defends only the allegations set forth in paragraphs 19, 30, 33, 34 and 46.

Paragraph 46 introduces five specific representations as follows:

> Commencing in the Fall 1992 and continuing through March 11, 1993, Defendants made the following false representations as hereinbefore alleged in order to induce PLAINTIFF to purchase the 8500 Software, enter into the Agreements and make the payments required thereunder....

Paragraph 19 introduces the same five statements by saying that four Micros employees "among others" made those representations between October 1992 and March 11, 1993.

 Although these paragraphs do set forth the "what" as to specific alleged misrepresentations, they fail to meet the "who", "when" and "where" requirements for those statements. Paragraph 46 lumps the two defendants together and gives no indication as to which one, let alone which particular employee, made each of the alleged statements. "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993), *quoted in Vicom, Inc. v. Har-*

*bridge Merchant Servs., Inc.,* 20 F.3d 771, 778 (7th Cir.1994). Absent a compelling reason, a plaintiff normally is not entitled to treat multiple corporate defendants as one entity. *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1329 (7th Cir.1994). The failure regarding who made the alleged misrepresentations is partially rectified by paragraph 19, which in its introductory language attributes the same statements to Micros. Nevertheless, paragraphs 19 and 46 both fail to identify what individuals at Micros made the statements and which of Budgetel's own employees actually heard the communications, leaving the "who" allegations still insufficient. *See Jepson,* 34 F.3d at 1328 ("the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications"). The complaint also fails to set forth the place or setting where the communications allegedly occurred and whether they occurred in person or by phone, any of which might give defendants a better idea regarding their context and who made them. Finally, a five to six month window of time does not adequately inform defendants of the specific date on which these alleged misrepresentations were made, and thus does not satisfy the "when" requirement for pleading fraud with particularity.

Other allegations of fraud suffer from the same defects. Paragraph 33 does not even explain the "what" sufficiently, as exactly what constitutes the alleged misrepresentation is unclear. Paragraph 30 asserts that defendants fraudulently concealed their plans to abandon further development of the software sold to plaintiff, but gives no more specificity than that such concealment involved Micros not sending plaintiff a notice provided to other licensees. No mention is made at all regarding time and place of or the parties involved in the concealment. Moreover, the paragraph's discussion of the notice is made upon information and belief, "a clearly improper locution under the current federal rules, which impose (in the amended Rule 11) a duty of reasonable pre-complaint inquiry not satisfied by rumor or hunch." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992).

Even if Budgetel claims it did not receive the notice and thus certain facts were inaccessible, it nevertheless is required to state the factual grounds for its suspicions that Micros sent a notice to other licensees. *See id. 959 F.2d* at 684; *Uni\*Quality,* 974 F.2d at 924.

As stated above in section II.D.5, the claim set forth in paragraph 34 is barred by the economic loss doctrine.

By failing to support any other specific allegations of fraud in response to defendants' motion, plaintiff concedes that they are insufficient. Those other allegations fail anyway. For instance, paragraph 43 is set forth only upon information and belief and fails to particularly describe the time and place of or parties to the communications; paragraph 12 similarly fails to describe adequately the time and place of or parties to the fraud.

The fraud claims alleged in paragraphs 19, 30, 33, and 46 might be rectified by repleading. But in the event that, when pled correctly, the allegations of paragraph 30 refer to fraud occurring subsequent to the parties' execution of their contract, those allegations will be barred by the economic loss doctrine. Any duty not to conceal plans for software development would arise only pursuant to the contract itself. Repleading the allegations of paragraph 30 in that case would be futile.

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the recommendation of the magistrate judge is **ADOPTED** in regard to the second (RICO), third (WOCCA), and fourth (negligent misrepresentation) counts in the complaint and defendants' motion to dismiss those counts is **GRANTED** for the reasons set forth in the recommendation; those claims are **DISMISSED.**

**IT IS ORDERED** that the recommendation of the magistrate judge is **MODIFIED** in regard to the first count of the complaint in that the defendants' motion to dismiss that count is **GRANTED** but generally on different grounds, as set forth above. The first count of the complaint is **DISMISSED WITHOUT PREJUDICE.**

**IT IS ORDERED** that plaintiff shall have 21 days from the date of this order within which to amend its complaint to replead with particularity its fraud in the inducement claim, if it so chooses.

And finally, as this case upon filing was randomly assigned to Magistrate Judge Gorence,

**IT IS ORDERED** that the case be returned to the magistrate judge for further proceedings.