The **BRADLEY FACTOR, INC., Plaintiff,**

v.

**UNITED STATES of America, Department of Treasury, Internal Revenue Service, Joseph A. Spicola, as Trustee for Medical Resources International, Inc., a dissolved Florida corporation, and Southern Commerce Bank, Defendants.**

No. 95–1147–CIV–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Feb. 8, 2000.

---

Peter L. Pollock, Jr., Akerman, Senterfitt & Eidson, P.A., Orlando, FL, Catherine Peek McEwen, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for Bradley Factor Inc., plaintiff.

Susan R. Waldron, U.S. Attorney's Office, Tampa, FL, John A. Galotto, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S., defendant.

Hale A. Sandridge, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Joseph A. Spicola, as Trustee for Medical Resources Intern., Inc., a dissolved Florida corp., defendant.

Ronald Henry Trybus, Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A., Tampa, FL, for Southern Commerce Bank, defendant.

### ORDER ON DEFENDANT SOUTHERN COMMERCE BANK'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on the Motion for Summary Judgment of Defendant Southern Commerce Bank as to Count III of Plaintiff's Complaint (Dkt.54), Memorandum of Law (Dkt.55), and Plaintiff's Opposition (Dkt.65). The Court also has for consideration Plaintiff's Motion for Partial Summary Judgment as to Count II of the Complaint (Dkt.58).

### FACTUAL BACKGROUND

On or about December 19, 1988, Defendant, SOUTHERN COMMERCE BANK (hereinafter "SCB"), made a loan to Defendant, MEDICAL RESOURCES INTERNATIONAL (hereinafter "MRI"), in the amount of $275,000.00. In order to secure the debt to SCB, MRI executed and delivered a Security Agreement and UCC–1 Financing Statement which granted SCB a blanket lien on MRI's assets and existing and after-acquired equipment. Subsequently, MRI executed and delivered a series of renewal and consolidation notes, the last of which was executed on August 21, 1992 in the sum of $157,880.57.

At the time of the August 21, 1992 Renewal Note, MRI's debt was secured by SCB's perfected lien on all of MRI's existing and after-acquired equipment, including one medical latex glove making machine. Because MRI believed SCB was adequately secured with collateral for its outstanding debt, MRI requested that SCB agree not to include a second glove making machine MRI had purchased in June of 1992 in the blanket lien. On August 25, 1992, SCB's President, Tom Wilson, sent a letter to MRI agreeing to exclude the second glove making machine from the Security Agreement.

On or about March 10, 1993, the Internal Revenue Service (hereinafter "the IRS") filed a Notice of Federal Tax Lien with the Secretary of State of Florida against MRI claiming an interest in all of MRI's equipment, including the second glove making machine.

On November 12, 1993, SCB assigned to Plaintiff, THE BRADLEY FACTOR, INC. (hereinafter "BFI") all of its interest in MRI, including but not limited to, the August 21, 1992 Renewal Note and the related loan documents granting security interest in MRI's assets and equipment. Prior to BFI's purchase of the SCB's loan to MRI, the President of BFI, William Campbell, requested from SCB copies of SCB's entire file regarding its loans to MRI. SCB forwarded copies of the file to BFI and both Mr. Campbell and BFI's attorney, Michael Sharp, reviewed the file. The August 25, 1992 letter from SCB to MRI releasing SCB's interest in the second glove making machine was not included with the file. Both Mr. Campbell and Mr. Sharp stated in affidavits that they had no knowledge of the letter's existence or of its content. Following review of the SCB's file and the results of a UCC search, BFI concluded that SCB had a perfected security interest in all of the assets and equipment of MRI, including the second glove making machine. BFI then acquired all of SCB's interest in MRI's loan for $195,000.00.

Following the Assignment of the Notes, Security Agreement and collateral from SCB to BFI, MRI defaulted. Subsequently, the IRS informed BFI of its interest in the second glove making machine pursuant to the tax lien filed in March of 1993 and SCB's letter of August 25, 1992 excluding the machine from the Security Agreement and releasing SCB's interest.

On June 15, 1995, BFI filed a three-count Complaint in the State Court of Hillsborough County, Florida against SCB, the IRS and MRI (Dkt.2). The IRS removed this action to this Court on July 17, 1995 (Dkt.1). Count I of BFI's Complaint requests this Court to declare BFI's rights in the second glove making machine. Count II of the Complaint alleges that SCB materially breached its warranty that it had not further modified or amended the loan documents. In Count III of its Complaint, BFI alleges that SCB fraudulently induced BFI into executing the contract by affirmatively representing to BFI that it had perfected security interest in all of MRI's equipment, including the second glove making machine.

On May 22, 1996, the IRS filed its Motion for Judgment on the Pleadings asserting that, as a matter of law, its interest in the second glove making machine was superior to all competing interests. (Dkt.14). MRI later joined the IRS' Motion. On November 26, 1996, this Court entered an Order Granting the IRS' Motion for Judgment on the Pleadings and on April 1, 1999, Final Judgment was entered in favor of the IRS as to Count I of BFI's Complaint. (Dkt.48). Discovery resumed as to Counts II and III and depositions were taken of Mr. Campbell and SCB's President, Thomas Wilson, regarding BFI's allegations of SCB's breach of warranty and fraud.

### STANDARD OF REVIEW

Summary judgment should only be entered where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P.Rule 56(c). The evidence is viewed in the light most favorable to the non-movant. *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts are material only if they will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505. Hence, the substantive law of the case determines which facts are material and which are irrelevant. *Id.*

The United States Supreme Court held in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) that the plain language of Federal Rule of Civil Procedure 56(c) mandates summary judgment after "adequate time for discovery and upon motion, against a party who fails to establish the existence of an essential element to the party's case, and on which the party will bear the burden at trial." The Court also held that Rule 56(e) requires the non-moving party to go beyond the pleadings in establishing whether there are specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether to grant summary judgment, the district court acknowledges that "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### DISCUSSION

This Court will first address Defendant's Motion for Summary Judgment as to Count III, and Plaintiff's memorandum in opposition. Defendant, SCB, contends that the fraud alleged in Count III is inseparable from Plaintiff's breach of warranty claim in Count II, and is thus barred as an independent claim by Florida's economic loss rule. However, Plaintiff, BFI, asserts that the fraud claim in Count III amounts to an independent tort of fraud in the inducement and is not barred pursuant to the economic loss rule.

 Florida's economic loss rule bars independent tort claims stemming from a contractual breach that only result in economic loss. *See AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180 (Fla. 1987). However, this rule does not apply to causes of action based upon negligent or intentional torts considered independent of the contractual breach even though a breach of contract action exists. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla.1996). Facts surrounding the tort claim of fraud are deemed interwoven with the facts surrounding the breach of contract claim if the factual inquiry needed to prove both allegations is essentially the same. *See Dantzler Lumber & Export Co. v. Bullington Lumber Co., Inc.,* 968 F.Supp. 1543, 1547 (M.D.Fla.1997). The fact that the compensatory damages sought in both counts are the same has no bearing on the independence of the two claims. *See La Pesca Grande Charters, Inc. v. Moran,* 704 So.2d 710 (Fla. 5th DCA 1998).

Defendant argues that Plaintiff's claim of fraudulent inducement is indistinguishable from the claim for breach of warranty because the fraud claim concerns the very essence of the contract. Defendant relies on the analysis set forth in *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc.,* 209 Mich.App. 365, 532 N.W.2d 541 (1995) which was approved by the Florida Supreme Court in *HTP* and cited by this Court in *Dantzler.* The court in *Huron Tool* adopted an exception to the economic loss rule for fraudulent inducement claims with one limitation, that the inducement claim is not "interwoven" with a breach of contract claim. The court stated that a fraudulent inducement claim is considered "interwoven" where the alleged misrepresentations concern the quality or character of the goods that are the subject of the contractual agreement. *See id.* at 544–45. Defendant cites to Florida cases that have adopted *Huron*'s ratio-

nale. *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74 (Fla. 3d DCA 1997), and *Dantzler*.

However, *Huron*'s limitation on the fraudulent inducement exception has since been severely criticized. *See Budgetel Inns, Inc. v. Micros Systems, Inc.*, 8 F.Supp.2d 1137 (E.D.Wis.1998). The *Budgetel* court stated the limitation of the inducement exception to claims not involving the quality or character of the subject matter of the contract is "seriously flawed." *See id.* at 1146. The court stated that in practice the limitation to the exception "is so broad that is swallows the exception whole." The court explained that:

> The *Huron* limitation suggests a misunderstanding of the tort of fraud in the inducement. In all fraud in the inducement cases the alleged fraudulent misrepresentations will either concern the quality and characteristic of the underlying subject matter, because that is the definition of "fraud in the inducement" itself ... Because the contract concerning the "particular thing" will always be considered "interwoven" with the deceit under *Huron*, fraud in the inducement claims will always be barred. The tort, after all, is inducing someone to enter into a contract, so to say it does not apply where the tort involves the contract or its subject matter analytically makes no sense.

*Id.* at 1147.

The court also recognized that the tort of fraud in the inducement, by definition, is independent of the contract in that the fraudulent inducement occurs prior to the formation of the contract. *See id.* According to *Budgetel*, the problem with *Huron* is that "it transforms a claim that a contract is invalid because procured by fraud into a dispute about the terms of a contract." *See id.* at 1148. The *Budgetel* court also disagreed with the Florida courts' application of *Huron* in *HTP*, and *Hotels of Key Largo*. *See id.*

██ Defendant contends that Plaintiff's fraud claim is related to the subject matter of the contract and therefore constitutes fraud in the performance, not fraud in the inducement. Although this Court found *Huron* persuasive in *Dantzler*, it is not persuasive here. In *Dantzler*, this Court determined that the fraud committed was not in the inducement because the fraudulent conduct was post-contractual. *See id.* at 1547. In the instant case, Defendant's act of omitting the letter from the file was pre-contractual and, therefore, does constitute fraudulent inducement despite the fact the fraud concerns the subject matter of the contract.

Defendant also relies on *Stone's Throw Condominium Assoc. v. Sand Cove Apartments, Inc.*, 1999 WL 445685 (Fla. 2d DCA July 2, 1999). However, this case has since been reheard and that part of the decision based on the economic loss rule was reversed. *See Stone's Throw Condominium Ass'n, Inc. v. Sand Cove Apartments, Inc.*, 749 So.2d 520 (Fla. 2d DCA, 1999).

██ Additionally, Defendant contends that Plaintiff failed to allege any facts of wrongdoing in its claim for fraud that are distinguishable from the facts alleged in the breach of warranty claim. The factual inquiry supporting the breach of warranty claim is the language of the contract itself. Fraud in the inducement occurs where one party's ability to negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior. *See Hotels of Key Largo*, 694 So.2d at 77. Plaintiff stated in its memorandum of law that its factual basis for asserting fraudulent inducement is Defendant's omission of the August 25, 1992 letter when Defendant forwarded copies of the file to Plaintiff prior to executing the contract. Plaintiff asserts that it reviewed the file without knowledge of a letter releasing a key item of collateral and that, had it known of the release, it would not have entered into the contract. Therefore, Plaintiff's ability to negotiate or make informed decisions regarding whether to acquire Defendant's

interest in MRI was undermined by Defendant's pre-contractual omission of the August 25, 1992, letter from the file. The Court concludes the factual inquiries supporting the fraud and breach of warranty claims are distinguishable.

Defendant also argues that it made no affirmative representations to Plaintiff that it had an interest in the second glove making machine. It is well-settled in Florida that fraud in the inducement requires proof of: (1) a false statement of a material fact; (2) that the defendant knew or should have known was false; (3) that was made to induce the plaintiff to enter into a contract; and (4) that proximately caused injury to the plaintiff when acting in reliance on the misrepresentation. *See Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1425 (S.D.Fla.1996). The requirement of a false statement includes material misrepresentations *or omissions of fact. See Butterworth v. Quick & Reilly, Inc.*, 998 F.Supp. 1404 (M.D.Fla.1998) (emphasis added). Defendant's omission of the August 1992 letter amounts to a false statement of material fact. Therefore, Defendant's argument that there were no affirmative representations made to Plaintiff regarding the second glove making machine in the loan documents or during communications is without merit.

The Court rejects Defendant's contention that it is entitled to judgment as a matter of law as to the fraud claim pursuant to the economic loss rule. Plaintiff's claim of fraudulent inducement alleged in Count III is a tort independent from Plaintiff's breach of warranty claim in Count II. The factual inquiry required for both claims is separate and distinct; therefore, the economic loss rule is not applicable.

This Court will now address Plaintiff's Motion for Partial Summary Judgment as to Count II of the Complaint on the issue of liability only. In Count II, Plaintiff alleges Defendant breached its warranty that the loan papers had not been modified or amended based upon the express language set forth in Part B of the Assignment contract. Generally, construction or ambiguity of a contract is a question of law and the intent of the parties is an issue of fact. *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 905 (11th Cir.1998). In order for summary judgment to be appropriate, there must be no genuine issue of material fact with regard to the parties' intent. *See id.* at 911.

The parties' intent in this matter is clear, and the terms of the Assignment contract are unambiguous. The language of the first paragraph of the contract states the assignment is made without recourse and warranty or representation "except as expressly set forth herein." The express language set forth in Part B of the contract states that "The Loan Documents have not been further modified or amended by Assignor as of the date hereof." In fact, the Security Agreement describing the collateral for the loan was modified by Defendant's August 1992 letter excluding the second glove making machine from the list of collateral. Plaintiff had no knowledge of this modification to the loan documents because Defendant omitted the letter from the file when it was turned over to Plaintiff for review. Therefore, Defendant breached its warranty that no modification or amendment was made to MRI's loan documents.

Defendant contends as an affirmative defense that Plaintiff had a duty to conduct its own investigation of Defendant's interest in the second machine in light of the IRS' tax lien and its possible superiority to Defendant's interest in the machine, and the nonrecourse nature of the contract. These arguments are not persuasive. Notice of the IRS tax lien and its possible superiority to Defendant's interest in the machine has no bearing on Defendant's warranty that no modifications or amendments were made to the loan documents. Additionally, the nonrecourse provision of the contract only indicates that there is no guaranty that MRI will actually pay the loan, and does not

eliminate the representation that the contract itself is valid and effective. *General Electric Credit Corp., v. Air Flow Industries, Inc.,* 432 So.2d 607, 609 (Fla. 3d DCA 1983).

█ Additionally, the Florida Supreme Court has held that comparative negligence is not applicable to fraudulent misrepresentation. *Besett v. Basnett,* 389 So.2d 995 (Fla.1980). A party may rely on the truth of a fraudulent representation, even though its falsity could have been ascertained had the party conducted an investigation. *See id.* at 998. However, in *Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 696 So.2d 334, 336 (Fla.1997), the Florida Supreme Court has held that comparative negligence is applicable to cases involving negligent misrepresentation. In the instant case, the warranty expressed in Part B of the contract represented that there had been no modifications or amendments to the loan documents, when in fact there had been a modification to the collateral described in the Security Agreement pursuant to the omitted letter. Defendant does not dispute that the letter was omitted or that it was omitted intentionally. Moreover, Defendant did not respond to Plaintiff's summary judgment motion as to the breach of the warranty expressed in Part B of the contract. If a party fails to respond to the summary judgment motion, summary judgment shall be entered against that party if appropriate. *Pulte Home Corp., Inc. v. Ply Gem Industries, Inc.,* 804 F.Supp. 1471, 1483 (M.D.Fla. 1992). The Court finds that Defendant's representations in its warranty were fraudulent and Plaintiff had no duty to investigate Defendant's warranty that no modifications were made to the loan documents.

### CONCLUSION

The Court rejects Defendant's contention that the fraud alleged in Count III is barred by the economic loss rule. Plaintiff's allegation of fraudulent inducement is a tort independent from the alleged breach of warranty set forth in Count II, as the claims are factually distinguishable. Addi-

tionally, the Court finds Defendant breached its warranty set forth in Part B of the contract as a matter of law. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt.54) as to Count III of Plaintiff's Complaint be **denied,** and Plaintiff's Motion for Partial Summary Judgment (Dkt.58) as to Count II be **granted.**